UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SHANE ALLEN MILLS,

                    Petitioner,

v.                                    Case No:  5:10-cv-577-Oc-29PRL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS and FLORIDA
ATTORNEY GENERAL,

                    Respondents.
_____/

## OPINION AND ORDER

Shane Allen Mills ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 by filing a petition (Doc. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought by Petitioner should not be granted (Doc. 3).  Thereafter, Respondents filed a response in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts (Doc. 9).  Petitioner filed a reply to the response (Doc. 13).

Petitioner raises two claims in his petition: (1) the trial court abused its discretion when it determined that Petitioner had willfully and substantially violated the terms and conditions of his probation; and (2) counsel was ineffective for failing to call critical witnesses at Petitioner's violation hearing (Doc. 1 at 4-7).

Because this Court can "adequately assess [Petitioner's] claims without further factual development," an evidentiary hearing will not be conducted. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Upon due consideration of the petition, the response, the reply, and the state court record, this Court concludes that both claims in the petition should be denied.

## I.   Background and Procedural History

On August 12, 2003, Petitioner was charged by information with one count of aggravated battery causing great bodily harm (App. A).[1] On June 15, 2004, Petitioner entered a plea of no contest to the charges (App. C). Petitioner received a sentence of seven years in prison, suspended upon the successful completion of five years of drug/alcohol offender probation and five months and 29 days of incarceration (App. D).

On May 21, 2007, an amended affidavit of violation of drug offender probation was filed alleging that Petitioner had violated two conditions of his probation (App. E). A hearing was held on the alleged violations on October 11, 2007 (App. E). After the violation hearing, the trial court determined that Petitioner had violated the terms and conditions of his probation. Petitioner's probation was revoked, and he was sentenced to the seven year prison term that had been previously suspended (App. G).

---

[1] Unless otherwise noted, references to Appendices are to those filed by Respondents on April 16, 2012 (Doc. 16).

Petitioner appealed the revocation, arguing that the trial court had abused its discretion in finding that he had willfully and substantially violated the terms and conditions of his probation (App. H).  On October 28, 2008, the Fifth District Court of Appeal *per curiam* affirmed (App. J); Mills v. State, 995 So. 2d 513 (Fla. 5th DCA 2008).

Petitioner filed a motion to correct sentence under Florida Rule of Criminal Procedure 3.800 ("Rule 3.800 motion") in which he argued that he was sentenced too harshly considering that there was little evidence that he had actually violated the terms and conditions of probation (App. L).  The motion was denied on January 20, 2007, and Petitioner did not appeal the denial (App. M).

Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion").  In the motion, Petitioner alleged that: (1) his sentence did not comply with the sentencing guidelines; (2) hearsay was used as a basis for the violation of probation; (3) he had completed the majority of his probation prior to the violation; and (4) his prior attorney had not raised these issues on appeal, despite his request that the attorney do so (App. N). The postconviction court denied the motion, and Petitioner did not appeal (App. O).

On August 18, 2009, Petitioner filed another Rule 3.800 motion, alleging that the trial court erred by sentencing him to drug offender probation (App. P).  The postconviction court denied the motion, and the Fifth District Court of Appeal *per curiam* affirmed (Doc. Q); <u>Mills v. State</u>, 23 So. 3d 1194 (Fla. 5th DCA 2009).

Petitioner filed a new Rule 3.850 motion on May 21, 2010 in which he alleged that trial counsel was ineffective for failing to call critical witnesses at the violation hearing (App. T).  The motion was denied, and the Fifth District Court of Appeal *per curiam* affirmed (App. V); <u>Mills v. State</u>, 46 So.3d 64 (Fla. 5th DCA 2010).

The instant petition was filed in this Court on November 1, 2010 (Doc. 1).

## II.  <u>Governing Legal Principles</u>

### a.  *The Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identified the governing legal principle, but applied it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or

5

unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003)(citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18; <u>Ward</u>, 592 F.3d at 1155.

Finally, the Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (dictum). When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). <u>See, e.g.</u>, <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

### b. *Ineffective Assistance of Counsel*

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u> Because both parts of the <u>Strickland</u> test must be satisfied in order to demonstrate a violation of the Sixth Amendment, a district court need not address the performance prong if the petitioner cannot meet the prejudice prong, or vice versa. <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000).

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. Indeed, the petitioner bears the burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of

judicial scrutiny.  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.  That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

### c.  Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Specifically, the AEDPA provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)
>
>> (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (citing <u>Picard v. Conner</u>, 404 U.S. 270, 275-76 (1971)).  The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  <u>Snowden v. Singletary</u>, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims

9

procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.  "To establish 'cause' for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999).  To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a

10

"constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).

III. **<u>Analysis</u>**

    *a.* *Claim One*

Petitioner asserts that the trial court abused its discretion when it determined that Petitioner had willfully and substantially violated the terms and conditions of his probation sentence (Doc. 1 at 4). Specifically, Petitioner argues that the court's finding of a violation was "patently unfair" because his failure to report to his probation officer was based on misunderstanding, and "[t]he trial court imposed his sentence based on anger and not on the merits of the particular circumstances of this case." (Doc. 1 at 5-6). Petitioner raised this claim on direct appeal, and the Fifth District Court of Appeal denied the claim without a written opinion.

Although Petitioner raised this claim on direct appeal, he did not assert a Fourteenth Amendment violation in his state court brief on appeal, nor does he assert one now. Furthermore, Petitioner's direct appeal argument relied exclusively on state law substantive arguments and cited only to state cases. Thus, to the extent that Petitioner seeks to raise a Fourteenth Amendment due process claim, it is unexhausted. See Pearson v. Sec'y Dep't of Corr., 273 F. App'x 847 (11th Cir. 2008) (finding federal due process argument procedurally barred because the petitioner "did not raise his sufficiency argument in federal terms on direct appeal"). Petitioner cannot satisfy either of the exceptions to the procedural default bar. He has neither shown, nor alleged, cause and prejudice to excuse the default. Likewise, Petitioner has neither shown, nor alleged, the applicability of the actual innocence exception. Because Petitioner has already pursued a direct appeal, any renewed attempt to raise a constitutional due process claim in state court would be futile.[2] Therefore, Claim One is both unexhausted and procedurally barred.

Even assuming, for the sake of argument, that Claim One is not procedurally barred, any federal due process claim fails on

---

[2] A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999). The latter is applicable here.

the merits under 28 U.S.C. § 2254(d).   The United States Supreme Court has suggested that the Due Process Clause requires sufficiency of the evidence in probation violation proceedings. See Black v. Romano, 471 U.S. 606, 615-616 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process . . . The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."); see also Douglas v. Buder, 412 U.S. 430 (1973) (probation revocation invalid under Due Process Clause where there was no evidentiary support for finding that probation conditions were violated). However, the United States Supreme Court has indicated that proof beyond a reasonable doubt is not required for a court to determine that probation revocation is appropriate. See Sampson v. California, 547 U.S. 843, 849 (2006).   Indeed, in Florida, the prosecution need only prove by a preponderance of the evidence that the defendant committed a willful and substantial violation of a condition of probation. Lawson v. State, 941 So.2d 485, 488 (Fla. 5th DCA 2006).

    Five people testified at Petitioner's violation hearing (App. F).   His probation officer James T. Gulch ("Gulch") testified that Petitioner had reported to a routine meeting on May 2, 2007 and was told to report back in June (App. F at 10).   Gulch testified that after Petitioner left, he received a phone call from an

anonymous person who told him that Petitioner had bought and used crack after leaving Gulch's office Id.  Based on the call, Gulch telephoned Petitioner and told him to report to the probation office on May 4, 2007 at 8:15 a.m. Id. at 11, 44. Petitioner did not report at 8:15, but called Gulch around 9:00 a.m., stating that he had an emergency meeting at the Childhood Development Center.  Gulch instructed Petitioner to report to his office at 10:00 a.m., or whenever the meeting at the Childhood Development Center concluded, and gave him permission to bring his children with him.  Id. at 13.  Petitioner told Gulch that he could not comply because he had to work.  Id.  When questioned further, Petitioner told Gulch that he could not come in because he had to babysit. Id. at 14.  Gulch told Petitioner that he would give him "a couple" of hours to come to his office.  Id.

Gulch said that he did not believe Petitioner's story regarding an emergency meeting, so he drove to the Childhood Development Center, where he was informed that Petitioner did not have an appointment and did not come to the center on that day (App. F at 14).  Gulch called the mother of Petitioner's children who told him that Petitioner had dropped the children off with her after Gulch and Petitioner had spoken.  Id. at 17.  Gulch testified that from May 4, until Petitioner was located in Tampa on August 2, 2007, he visited Petitioner's home several times and

found it unoccupied.  He also noted that Petitioner's dog had been left in the care of others.  Id. at 24, 30.

Gulch eventually received information that Petitioner was residing in Tampa and passed the information along to the Tampa police department who arrested Petitioner at a Tampa motel (App. F at 22).  Gulch testified that between May 4, 2007 until August 2, 2007, Petitioner made no attempt to contact him.

The officer who arrested Petitioner testified that Petitioner told him that he knew he had violated his probation, and he knew that Gulch was looking for him (App. F at 49).  The arresting officer also testified that the owner of the Tampa motel told him that Petitioner was "staying" at the hotel.  Id. at 107-08.

The owner of the preschool attended by Petitioner's child testified that she had erroneously told the Mills family that their child had to be recertified for daycare by the Childhood Development Center by May 4, but that she later realized that the recertification date was actually May 14, and she notified the family of the error (App. F. at 74-75).

Petitioner testified that he never lived in Tampa, but was in the area frequently for his business (App. F at 94, 92). Petitioner admitted that he never reported back to Gulch because he was trying to avoid getting arrested for violation of probation until his wife, who was pregnant at the time, had her baby.  Id. at 100.

15

Condition Eight of Petitioner's Order of Probation stated:

> You will promptly and truthfully answer all
> inquiries directed to you by your Supervising
> Officer, and allow the Officer to visit in
> your home, at your employment site or
> elsewhere, and you will comply with all
> instructions he may give you.

(App. D).   Evidence was presented at Petitioner's violation hearing to establish that he disregarded Gulch's instructions to report to the probation office on May 4, 2007.   Notably, Petitioner does not deny that he did so.   Rather, Petitioner indicated that he knew he was supposed to report, but felt that doing so was futile.   Moreover, there is evidence that Petitioner was untruthful when he told Gulch that he had an "emergency appointment" at the Childhood Development Center.   An employee of the Center testified that Petitioner did not have an appointment on May 4, 2007 and did not even visit the Center on that date. Although Petitioner now asserts that he was not deliberately untruthful, but rather, that his answer to Gulch was based upon a misunderstanding, the trial judge specifically determined that Petitioner was not credible in this regard, admonishing Petitioner that "[y]ou used your child as an excuse to get out of your probationary responsibilities." (App. F at 115).

Condition Three of Petitioner's Order of Probation notified Petitioner that he could not change his residence or employment or leave his county of residence without first procuring the consent of his supervising officer (App. D).   Evidence was presented that

16

Petitioner violated Condition Three by leaving Citrus County without first procuring the consent of his probation officer. Petitioner testified that he went to Hillsborough County to work every day and that he sometimes stayed at his mother's house in Tampa (App. F at 87-88, 92, 95). Moreover, in his brief in support of his direct appeal, Petitioner admitted that he moved from his approved residence because he felt that doing so "was necessary for the good of his family" since he wanted to be out of custody for the birth of his child (App. H at 13, 18).

Sufficient evidence was presented at Petitioner's violation hearing to show by a preponderance of the evidence that Petitioner willfully and substantially violated Conditions Eight and Three of his Order of Probation. Petitioner makes the unsupported argument that the state court's assignment of credibility was "based upon anger and not on the merits of the particular circumstances of this case." (Doc. 1). However, this assertion does not entitle Petitioner to relief because determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses. Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333 341-42 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the

[witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); see also Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("[Title] 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to re-determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

Section 2254 provides that a state court's factual findings, including credibility determinations, are entitled to deference unless Petitioner presents clear and convincing evidence that rebuts the finding. 28 U.S.C. § 2254(e). Petitioner has not done so in this case, and he is not entitled to relief on this claim.

Claim One is dismissed as unexhausted and procedurally barred. Alternatively, Claim One is denied pursuant to 28 U.S.C. § 2254(d).

**b.   _Claim Two_**

Petitioner asserts that his attorney rendered ineffective assistance by failing to call critical witnesses at his violation hearing (Doc. 1 at 6). Specifically, Petitioner states that three uncalled witnesses could have testified that Petitioner did not move to Tampa as was asserted by the prosecution. Id. at 9.

Petitioner also asserts that his wife would have testified regarding the date mix-up at the Childhood Development Center and would have testified that both she and Petitioner believed that Petitioner's probation was violated when he did not show up at Gulche's office on May 4, 2013, so therefore "[t]hey both decided that [Petitioner] would just keep working until he was arrested." Id. at 11. Petitioner argues that counsel instructed him to have these witnesses attend his violation hearing, but did not call them as defense witnesses. Id. at 9-10.

Petitioner raised this issue in his second Rule 3.850 motion, and the trial court denied the claim on the basis that five witnesses had testified at the violation hearing, and counsel did not render ineffective assistance by failing to call witnesses or present evidence that would have been cumulative (App. U). Petitioner argues that the state court unreasonably applied Strickland when it failed to "rationalize" the reasonableness of counsel's performance (Doc. 1 at 13). This Court does not agree that the postconviction court's application of Strickland was unreasonable.

Whether to present certain testimonial evidence is a matter of trial strategy, and complaints of uncalled witnesses generally are disfavored. Buckelew v. United States, 575 F.2d 515, 521 (5th

Cir. 1978).[3]  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision[.]" <u>Conklin v. Schofield</u>, 366 F.3d 1191, 1204 (11th Cir. 2004) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)).  A defendant's own self-serving speculation that missing witnesses would have been helpful is insufficient to carry a petitioner's burden to justify habeas relief.  <u>See</u> <u>Johnson v. Alabama</u>, 256 F. App'x 1156, 1187 (11th Cir. 2001); <u>Aldrich v. Wainwright</u>, 777 F.2d 630, 636 (11th Cir. 1985); <u>Streeter v. United States</u>, 335 F. App'x 859, 865 (11th Cir. 2009).  Petitioner has not attached any sworn statements from these uncalled witnesses, and merely speculates that they would have testified on his behalf and that their testimony would have been favorable.  Such speculation is "insufficient to carry the burden of a habeas corpus petitioner[.]" <u>Aldrich</u>, 777 F.2d at 636.

Moreover, in light of the fact that Petitioner admitted that he did report to Gulch's office on May 4, as was required, and given the fact that Petitioner admitted leaving Citrus County without Gulch's permission, it is unclear how these witnesses' testimony, even had it been presented at the probation hearing, would have had any impact on the result of the proceedings. Additional information regarding the date mix up at the Childhood

---

[3] in <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted, as precedent, decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Development Center was irrelevant and cumulative because Petitioner admitted that he never went to the Childhood Development Center on May 4, or on any other date. Likewise, Petitioner admitted at the hearing that he regularly and routinely travelled to Hillsborough County without his probation officer's consent or knowledge; testimony that Petitioner was also often in Citrus County would have not changed this fact. The postconviction court's conclusion that "[c]ounsel should not be deemed ineffective for failing to call witnesses or present evidence that is merely cumulative" was neither contrary to Strickland, nor based upon an unreasonable determination of the facts. Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

**IV.   Certificate of Appealability**

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

21

claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El</u>, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Shane Allen Mill is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction as to Claim One and denied as to Claim Two.  In the alternative, Claims One and Two are both denied.

2. Petitioner is **DENIED** a Certificate of Appealability and leave to proceed *in forma pauperis.*

3. The Clerk of the Court is directed to terminate all pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___4th___ day of November, 2013.


JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


SA:  OrlP-4 10-29
Copies to:  All parties of record

22